*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| Brian A. Rudolph,<br><br>　　plaintiff,<br><br>– v –<br><br>Board of Trustees of Illinois Community College District 508, an Illinois municipal corporation,<br><br>　　defendant. | **Jury trial demanded** |

# Verified Complaint of Discrimination and Retaliation

## Nature of action and verification of Complaint

1.　　This Complaint alleges discrimination on the basis of disability, perception of disability, and/or record of disability (General Anxiety Disorder) and/or retaliation for having requested a reasonable accommodation, and/or discrimination on the basis of age (almost age 53 when fired).

2.　　Plaintiff's Verification of paragraphs 3 through 28 of this Verified Complaint is attached as Exhibit A.

## Parties

3.　　Plaintiff is Brian A. Rudolph.

4.　　Defendant is the Board of Trustees of Illinois Community College District 508, an Illinois municipal corporation, commonly known as "City Colleges of Chicago".

## Defendant learns of Mr. Rudolph's Generalized Anxiety Disorder

5.　　On or about June 17, 2013, defendant hired Mr. Rudolph as Dean of Wilbur Wright College's College to Careers, Information Technology program.

6.      Approximately two months later, on August 19, 2013, Mr. Rudolph's doctor diagnosed him with Generalized Anxiety Disorder and referred him to a psychiatrist.

7.      The day after Mr. Rudolph's doctor diagnosed him with Generalized Anxiety Disorder, defendant's President of Wilbur Wright College (David Potash), who was Mr. Rudolph's direct supervisor, received an e-mail from Mr. Rudolph that Mr. Rudolph would fill him in about the results of that doctor's appointment.

8.      That afternoon, defendant's President of Wilbur Wright College (David Potash), who was Mr. Rudolph's direct supervisor, and defendant's Human Resources Director of Wilbur Wright College (Kim Williamson) were both informed in person by Mr. Rudolph that he had been diagnosed with Generalized Anxiety Disorder.

9.      "Generalized Anxiety Disorder" is a recognized psychological disorder under the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 5th edition, commonly called the "DSM-5".

10.     Later, Mr. Rudolph's psychiatrist confirmed the diagnosis of Generalized Anxiety Disorder and prescribed various psychotropic medicines for him.

11.     Ever since the psychiatrist prescribed Mr. Rudolph those psychotropic medicines, Mr. Rudolph has faithfully taken those medicines per his psychiatrist's prescription.

12.     From time-to-time, defendant's President of Wilbur Wright College (David Potash), who was Mr. Rudolph's direct supervisor, various members of defendant's administration, various members of defendant's faculty, various members of

-2-

defendant's student body, and various community members complimented the job
Mr. Rudolph did as Dean of Wilbur Wright College's College to Careers,
Information Technology program.

13.     Various of defendant's faculty and Information Technology staff were
empowered by Mr. Rudolph with the knowledge, skill, and information they
needed to deliver learning opportunities and educational services for diverse
student populations in Chicago.

14.     Defendant's mission of eliminating barriers to employment and addressing
and overcoming inequality of access in higher education was aided by Mr. Rudolph
while he held the position of Dean of Wilbur Wright College's College to Careers,
Information Technology program.

15.     Defendant's legitimate performance expectations were always met by
Mr. Rudolph.

**Defendant receives reasonable accommodation requests from Mr. Rudolph**

16.     Mr. Rudolph's Generalized Anxiety Disorder made it difficult for him to cope
when he was asked to perform tasks that conflicted with the faculty union contract,
when he was asked to perform tasks that conflicted with other regulations, when he
was asked to perform tasks that were designed to deceive external partners, or
when he was asked to handle simultaneous, urgent demands from many different
high-ranking officials at defendant's District Office and his supervisor.

17.     Both defendant's Human Resources Department and defendant's President of
Wilbur Wright College (David Potash), who was Mr. Rudolph's direct supervisor,
thereupon received from Mr. Rudolph several requests for reasonable

accommodations for his Generalized Anxiety Disorder.

18.     The reasonable-accommodation suggestions that defendant's Human
Resources Department and defendant's President of Wilbur Wright College (David
Potash), who was Mr. Rudolph's direct supervisor, received from Mr. Rudolph
were either already in defendant's budget (such as staffing the positions that
reported to and supported Mr. Rudolph, like the position of his Associate Dean, the
position of Director of Workforce Partnerships, and the other positions reporting
to him) or already supposed to be defendant's policy (such as respecting
Mr. Rudolph's pre-approved vacation days as being vacation days and not as being
days on which he was nonetheless expected to perform work) or were simply good
management practices (such as giving Mr. Rudolph clear guidelines,
understandable assignments, and a reasonable job description).

19.     Rather than implement or even explore these reasonable accommodations,
defendant's President of Wilbur Wright College (David Potash), who was
Mr. Rudolph's direct supervisor, began a campaign to persuade Mr. Rudolph to
quit, telling Mr. Rudolph out of the blue that he did not see his Deanship "as a good
fit for someone with your condition".

20.     Defendant's President of Wilbur Wright College (David Potash), who was
Mr. Rudolph's direct supervisor, also made several attempts to convince
Mr. Rudolph to resign because Mr. Rudolph supposedly hated his job, which was
not true.

21.     When Mr. Rudolph refused to resign, defendant's President of Wilbur Wright
College (David Potash), who was Mr. Rudolph's direct supervisor, began criticizing

-4-

Mr. Rudolph's performance, which he had not done at all up to then.

22.     On or about February 18, 2014, Griselda Silva, the new HR Director at Wright College, received a letter from Mr. Rudolph letter formally requesting reasonable accommodations for his Generalized Anxiety Disorder.  On or about that same date, defendant's President of Wilbur Wright College (David Potash), who was Mr. Rudolph's direct supervisor, also received a copy of that letter.

23.     On March 3, 2014, Sarah Levee from defendant's District Office met for about twenty minutes with Mr. Rudolph about his request for reasonable accommodations.

24.     At the end of the March 3, 2014, meeting, Ms. Levee told Mr. Rudolph that she would next meet with Wright College President Potash, Wright College HR Director Silva, and District Office HR, following which Mr. Rudolph would receive a formal response to his request for reasonable accommodations.

## Rather than accommodate Mr. Rudolph, defendant fires him

25.     Rather than formally responding to Mr. Rudolph's request for reasonable accommodations, defendant chose to fire him, which it did on April 4, 2014.

26.     The official of defendant who fired Mr. Rudolph was Stephanie Tomino, defendant's Vice Chancellor of Human Resources & Staff Development.

27.     The reason Vice Chancellor Tomino gave Mr. Rudolph was that he was an "at-will" employee.

28.     Defendant replaced Mr. Rudolph with Bonnie Kang, who is significantly younger than Mr. Rudolph, and who also had no credentials in the field of Information Technology.

**Venue**

29.     Mr. Rudolph worked for the defendant in the Northern District of Illinois, and this cause of action arose in that District.  Venue is proper by § 1391(b) of the Judicial Code [28 U.S.C. § 1391(b)].

# Count I – Disability Discrimination

30.     Mr. Rudolph realleges paragraphs 1 through 29 of this Verified Complaint.

**Jurisdiction**

31.     This Court has jurisdiction of this Count under § 107(a) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. § 12117(a)], incorporating § 706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. § 2000e-5(f)(3)], and under §§ 1331 and 1343 of the Judicial Code [28 U.S.C. §§ 1331 and 1343].

**Mr. Rudolph's disability**

32.     The ADA Amendments Act of 2008 applies to Mr. Rudolph's ADA claims, because defendant's actions and omissions giving rise to those claims took place in 2013, which was after the effective date of that Act.  Pub. L. 110−325, §8, 122 Stat. 3553 (Sep't 25, 2008), *codified at*, *e.g.*, 42 U.S.C. § 12101 (Note).

33.     Under the ADA Amendments Act of 2008, disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter".  42 U.S.C. § 12102(4)(A).

34.     Under the ADA Amendments Act of 2008, Mr. Rudolph's disability must be assessed in its active state, without regard to mitigating measures like medical

treatments, equipment, prosthetics, and assistive technology. 42 U.S.C. § 12102(4)(E)(i), (ii); 29 C.F.R. § 1630.2(j)(1)(vi).

35.     The ADA Amendments Act of 2008 expressly defines "major life activities" to include "caring for oneself, … eating, sleeping, walking, … speaking, breathing learning, reading, concentrating, thinking, communicating, and working". 42 U.S.C. § 12102(2)(A).

36.     The ADA Amendments Act of 2008 also expressly defines "major life activities" to include "brain … functions". 42 U.S.C. § 12102(2)(B).

37.     Mr. Rudolph's Generalized Anxiety Disorder in its active state, without regard to mitigating measures like medical treatment, substantially interfered with his major life activities of "caring for oneself, … eating, sleeping, walking, … speaking, breathing learning, reading, concentrating, thinking, communicating, and working" and/or with his major life activity of brain function.

38.     Mr. Rudolph's Generalized Anxiety Disorder in its active state, without regard to mitigating measures like medical treatment, was debilitating.

**ADA coverage**

39.     When defendant employed Mr. Rudolph, defendant was an "employer" within the definition of § 101(5) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. § 12111(5)].

40.     When defendant fired Mr. Rudolph, Mr. Rudolph was an "employee" of defendant's within the definition of § 101(4) of the Americans with Disabilities Act of 1990, as amended [42 U.S.C. § 12111(4)] and a "qualified individual with a disability" within the definition of § 101(8) of the Americans with Disabilities Act of

-7-

1990, as amended [42 U.S.C. § 12111(8)].

41.      Mr. Rudolph has fulfilled all conditions precedent to the bringing of these ADA claims. His Charge of Discrimination filed with the Equal Employment Opportunity Commission is attached to this Verified Complaint as Exhibit B, and the Department of Justice's letter notifying him that he had the right to sue on that Charge, along with the envelope that letter was mailed in, is attached to this Verified Complaint as Exhibit C.

**<u>Disability discrimination</u>**

42.      Defendant, by firing Mr. Rudolph and/or by refusing to accommodate his Generalized Anxiety Disorder, discriminated against Mr. Rudolph on the basis of his disability and/or perceived disability and/or record of disability.

**<u>Damages</u>**

43.      As a proximate result of defendant's discrimination against Mr. Rudolph on the basis of his disability and/or perceived disability and/or record of disability, Mr. Rudolph lost his job, lost wages, lost employee benefits, and suffered the type of emotional distress people normally suffer when they lose their jobs and/or are discriminated against, commonly called "garden-variety emotional distress".

***Wherefore***, plaintiff Brian A. Rudolph prays for:

    a.      A settlement conference pursuant to Federal Rule of Civil Procedure 16 to assist him and defendant to settle this case;

    b.      An Order requiring defendant to post notices concerning its duty to refrain from discriminating against its employees in violation of the Americans

with Disabilities Act, as amended;

c.     An Order enjoining defendant from discriminating against its employees in violation of the Americans with Disabilities Act, as amended;

d.     Back pay, employment benefits, and other compensation lost to him as a result of defendant's discriminating against him in violation of the Americans with Disabilities Act, as amended;

e.     Prejudgment interest at the prevailing rate on the award of back pay, lost employment benefits, and other compensation lost to him as a result of defendant's discriminating against him in violation of the Americans with Disabilities Act, as amended;

f.     Reinstatement to his job or to a substantially-similar job or pay for a reasonable time into the future in lieu of reinstatement;

g.     Compensatory damages for the harm he suffered as a result of defendant's discriminating against him in violation of the Americans with Disabilities Act, as amended;

h.     Reasonable attorney's fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

i.     Such other relief as this Court deems just and appropriate.

## Count II – Disability Retaliation

44.     Mr. Rudolph realleges paragraphs 30 through 41 of this Verified Complaint

**Disability retaliation**

45.     Defendant, by firing Mr. Rudolph, retaliated against Mr. Rudolph for having

requested reasonable accommodations for his Generalized Anxiety Disorder.

## **Damages**

46.     As a proximate result of defendant's retaliating against Mr. Rudolph for having

requested reasonable accommodations for his Generalized Anxiety Disorder,

Mr. Rudolph lost his job, lost wages, lost employee benefits, and suffered the type of

emotional distress people normally suffer when they lose their jobs and/or are

discriminated against, commonly called "garden-variety emotional distress".

*Wherefore*, plaintiff Brian A. Rudolph prays for:

a.      A settlement conference pursuant to Federal Rule of Civil Procedure 16 to
assist him and defendant to settle this case;

b.      An Order requiring defendant to post notices concerning its duty to
refrain from retaliating against its employees in violation of the Americans
with Disabilities Act, as amended;

c.      An Order enjoining defendant from retaliating against its employees in
violation of the Americans with Disabilities Act, as amended;

d.      Back pay, employment benefits, and other compensation lost to him as a
result of defendant's retaliating against him in violation of the Americans with
Disabilities Act, as amended;

e.      Prejudgment interest at the prevailing rate on the award of back pay, lost
employment benefits, and other compensation lost to him as a result of
defendant's retaliating against him in violation of the Americans with
Disabilities Act, as amended;

-10-

f.      Reinstatement to his job or to a substantially-similar job or pay for a reasonable time into the future in lieu of reinstatement;

g.      Compensatory damages for the harm he suffered as a result of defendant's retaliating against him in violation of the Americans with Disabilities Act, as amended;

h.      Reasonable attorney's fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

i.      Such other relief as this Court deems just and appropriate.

# Count III – Age Discrimination

47.     Mr. Rudolph realleges paragraphs 1 through 29 of this Verified Complaint.

## Jurisdiction

48.     This Court has jurisdiction of this Count under § 7(b) of the Age Discrimination in Employment Act of 1967, as amended [29 U.S.C. § 626(b)] and under § 1331 of the Judicial Code [28 U.S.C. § 1331].

## ADEA coverage and conditions precedent

49.     When defendant employed Mr. Rudolph, defendant was an "employer" within the definition of § 11(b) of the Age Discrimination in Employment Act of 1967, as amended [29 U.S.C. § 630(b)].

50.     When defendant fired Mr. Rudolph, Mr. Rudolph was an "employee" of defendant's within the definition of § 11(f) of the Age Discrimination in Employment Act of 1967, as amended [29 U.S.C. § 630(f)].

51.     Mr. Rudolph has fulfilled all conditions precedent to the filing of this age-

discrimination claim. His Charge of Discrimination filed with the Equal Employment Opportunity Commission is attached to this Verified Complaint as Exhibit B, and the Department of Justice's letter notifying him that he had the right to sue on that Charge, along with the envelope that letter was mailed in, is attached to this Verified Complaint as Exhibit C

## Age discrimination

52.     Defendant, by firing Mr. Rudolph, discriminated against Mr. Rudolph on the basis of his age in violation of Age Discrimination in Employment Act of 1967, as amended.

## Damages

53.     As a proximate result of the age discrimination alleged in this Verified Complaint, Mr. Rudolph lost his job, lost wages, and lost employment benefits.

***Wherefore***, plaintiff Brian A. Rudolph prays for:

a.      A settlement conference pursuant to Federal Rule of Civil Procedure 16 to assist him and defendant to settle this case;

b.      An Order requiring defendant to post notices concerning its duty to refrain from discriminating against its employees in violation of the Age Discrimination in Employment Act, as amended;

c.      An Order enjoining defendant from discriminating against its employees in violation of the Age Discrimination in Employment Act, as amended;

d.      Back pay, employment benefits, and other compensation lost to him as a result of defendant's discriminating against him in violation of the Age

Discrimination in Employment Act, as amended;

e.  Liquidated damages doubling the award of back pay, employment benefits, and other compensation lost to him as a result of defendant's discriminating against him in violation of the Age Discrimination in Employment Act, as amended;

f.  Reinstatement to his job or to a substantially-similar job or pay for a reasonable time into the future in lieu of reinstatement;

g.  Reasonable attorney's fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

h.  Such other relief as this Court deems just and appropriate.

## Jury Demand

Plaintiff Brian A. Rudolph hereby demands a trial by jury on all claims so triable.

Brian A. Rudolph,
plaintiff,

By: _____/s/David L. Lee_____
David L. Lee
One of his Attorneys

David L. Lee, ARDC #1604422
Jennifer Claire Weiss, ARDC #6291035
LAW OFFICES OF DAVID L. LEE
53 W. Jackson Blvd., Suite 801
Chicago, IL 60604
staff@davidleelaw.com
312-347-4400